UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN L. HICKS,

      Plaintiff,

-vs-                            Case No.:

WELLS FARGO BANK, N.A., a foreign
Corporation, ALDRIDGE CONNORS, LLP,
A foreign Limited Liability Partnership,
ASSURANT, INC., a foreign corporation, and
AMERICAN SECURITY INSURANCE
COMPANY, a foreign corporation,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KAREN L. HICKS, sues the Defendants, WELLS FARGO BANK, N.A.,
ALDRIDGE CONNORS, LLP, ASSURANT, INC., and AMERICAN SECURITY INSURANCE
COMPANY, and alleges as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a
federal question, and pursuant to 28 U.S.C. § 1367 for pendant state law claims.

2.      Plaintiff brings this action to recover damages for Defendants' acts in violation of
the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.*, (hereafter "TCPA") the
Florida Consumer Collection Practices Act, sections 559.55, *et seq.*, Florida Statutes (hereafter
"FCCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, (hereafter
"RESPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d),
(hereafter "RICO"), and for common law Intentional Infliction of Emotional Distress and Slander
of Credit.

3.     The alleged violations described herein occurred in Pinellas County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## PARTIES

4.     Plaintiff KAREN L. HICKS is a natural persons over the age of eighteen (18), who resides in St. Petersburg, Pinellas County, Florida.

5.     Plaintiff is a debtor and/or alleged debtor as that term is defined by section 559.55(2), Florida Statutes.

6.     Plaintiff is the "called party" with respect to the calls placed to her cellular telephone number, (727) 410-1616, as further described herein. See Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012); Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014).

7.     Defendant WELLS FARGO BANK, N.A. (hereafter "WELLS FARGO") is a foreign corporation with its primary place of business at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104, doing business in Florida through its registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. Upon information and belief, WELLS FARGO services its mortgage loans through its division WELLS FARGO HOME MORTGAGE.

8.     Defendant ASSURANT, INC. (hereafter "ASSURANT") is a Delaware corporation with its principal office in New York, New York. ASSURANT participates in the force-placed insurance market through its trade name, Assurant Specialty Property, and its business strategy "is to pursue long term growth in lender placed homeowner's insurance. . . The largest product line within Assurant Specialty Property is homeowners insurance consisting

2

principally of fire and dwelling hazard insurance offered through [ASSURANT's] lender placed program." [1]

9.      Upon information and belief, ASSURANT owns the "Assurant Specialty Property" trade name and allows its subsidiaries (including AMERICAN SECURITY INSURANCE COMPANY) to operate their force-placed insurance business under that name.

10.     Defendant AMERICAN SECURITY INSURANCE COMPANY (hereafter "ASIC") is a Delaware corporation and an indirect subsidiary of ASSURANT, writing force-placed insurance policies in all fifty states and the District of Columbia with its principal address in Atlanta, Georgia. ASIC often operates under the trade name "Assurant Specialty Property." American Security contracts with the lenders to act as a force-placed insurance vendor. Its duties include, but are not limited to, tracking loans in their mortgage portfolio, handling all customer service duties related to force-placed insurance, and securing force-placed insurance policies on properties when a borrower's insurance has lapsed.

11.     Upon information and belief, ASIC passes much of its profits from force-placed insurance to its corporate parent, ASSURANT.

12.     Defendant ALDRIDGE CONNORS, LLP, (hereafter "ALDRIDGE CONNORS") is a Georgia Limited Liability Partnership with its primary place of business at Fifteen Piedmont Center, 3575 Piedmont Rd., NE, Suite 500, Atlanta GA, 30305, doing business in Florida through its registered agent and Florida Offices, at 1615 South Congress Road, Suite 200, Delray Beach FL, 33445. According to its website, ALDRIDGE CONNORS "is a full service provider of legal services to depository and non-depository financial institutions including, banks, mortgage servicing concerns, institutional investors, private firms, and other commercial clients," focusing

[1] See Assurant Form 10-K for the fiscal year ending December 31, 2011, at 5, available at http://www.sec.gov/Archives/edgar/data/1267238/000119312512075371/d257568d10k.htm.

on the following practice areas, in relevant part: "Mortgage Default Services," "Litigation Services," "National Eviction Practice Group," and "Residential Real Estate Transaction Services."

## FACTUAL ALLEGATIONS

13. At all times material hereto, Defendant WELLS FARGO sought to collect an alleged debt from Plaintiff KAREN L. HICKS that arose from a transaction allegedly incurred for personal, family or household purposes, and is therefore a "consumer debt" as that term is defined by section 559.55(6), Florida Statutes.

14. At all times material, Defendant WELLS FARGO was the servicer of an alleged mortgage loan debt owed to Defendant WELLS FARGO by Plaintiff's deceased mother, Donna Hicks, which debt is the subject of the unlawful collection activity at issue herein.

15. On June 17, 2008, Plaintiff's mother, Donna Hicks, passed away.

16. On July 15, 2008, Plaintiff sent Defendant WELLS FARGO a photocopy of the death certificate reflecting that Donna Hicks had passed away, and a photocopy of the Revocable Inter Vivos Trust Agreement of Donna Hicks, reflecting that Plaintiff is the Successor Trustee as well as the beneficiary for distribution on death. See Exhibit "A" hereto.

17. Thereafter, Plaintiff attempted to contact Defendant WELLS FARGO in an effort to save her deceased mother's property. However, during each such attempt, Plaintiff was informed by Defendant WELLS FARGO's representatives that it could not discuss the account with Plaintiff, and Defendant's representatives could only speak with Donna Hicks, despite having received a copy of the death certificate reflecting that Donna Hicks was deceased.

18. Rather than communicate with Plaintiff during her calls to WELLS FARGO regarding the mortgage of her deceased mother, on or about July 15, 2010, Defendant illegally and

4

without Plaintiff's authorization, debited $1,615.92 from Plaintiff's personal checking account, representing an installment payment purportedly owed pursuant to the subject debt, which Plaintiff was at no time obligated to pay.

19.    On or about July 26, 2010, Plaintiff sent Defendant WELLS FARGO a letter, certified mail, return receipt requested, article number 7009 1410 0001 3206 5588, notifying Defendant that it had illegally debited $1,615.92 from Plaintiff's personal checking account, without authorization, and demanded that it be returned immediately. See Exhibit "B" hereto.

20.    As described herein, Defendant WELLS FARGO employed business practices resulting in intentional harassment and abuse of the Plaintiff and engaged in patterns of outrageous, abusive and harassing conduct by and through its agents and representatives in an effort to collect the above referenced debt from the Plaintiff.

21.    Defendant WELLS FARGO has engaged in conduct in violation of the TCPA and the FCCPA, and constituting intentional harassment and abuse of the Plaintiff, by and through its agents and representatives, on numerous occasions, within the four (4) year period preceding the filing of this action, initiating calls to Plaintiff's cellular telephone number, (727) 410-1616, to Plaintiff's residential phone number, to Plaintiff's business phone number and to the Plaintiff's facsimile number, several times per day, and on back to back days, with such frequency as can reasonably be expected to harass, in an effort to collect the above described debt that Plaintiff does not owe.

22.    Moreover, Defendant WELLS FARGO intentionally harassed and abused the Plaintiff on numerous occasions by sending Plaintiff threatening collection letters asserting false and misleading information, and by reporting false information to the Credit Reporting Agencies

with respect to Plaintiff, asserting that Plaintiff personally owes the subject debt and is delinquent on the installment payments thereunder.

23.     In 2011, Defendant WELLS FARGO, by and through its agents and employees, began its campaign of telephone collection calls to the Plaintiff on her aforementioned cellular telephone number in an attempt to collect the above described mortgage loan debt allegedly owed by Plaintiff's deceased mother, Donna Hicks.

24.     To date, Defendant WELLS FARGO has placed in excess of five hundred (500) calls to Plaintiff on her aforementioned cellular telephone number in an effort to collect the subject debt.

25.     Additionally, to date, Defendant WELLS FARGO has placed in excess of one-thousand (1,000) calls to Plaintiff on her residential, business and facsimile numbers in an effort to collect the subject debt.

26.     Plaintiff has advised Defendant WELLS FARGO on numerous occasions that she is not Donna Hicks and is not responsible for the alleged subject debt, and instructed Defendant to stop calling.

27.     Notably, on several occasions, Defendant WELLS FARGO sent Plaintiff correspondence acknowledging Plaintiff's requests that the collection calls cease. Cf., Exhibit "C" hereto. However, despite Plaintiff repeatedly requesting that Defendant WELLS FARGO stop calling her regarding the subject debt, and WELLS FARGO's numerous acknowledgements of these requests, the phone calls persisted. Defendant proceeded undeterred in its campaign of intentional harassment and abuse of the Plaintiff in an effort to collect the debt, including but not limited to:

6

      a.     Calling Plaintiff's aforementioned cellular telephone number, residential telephone number, business telephone number, and facsimile number, several times per day and on back to back days through the current date (or such time as will be established after a thorough review of Defendant's records). In most instances, Defendant would place multiple calls to the above described telephone numbers within minutes of each other;

      b.     Calling Plaintiff's aforementioned cellular telephone number, residential telephone number, business telephone number, and facsimile number, from an automated telephone dialing system and leaving pre-recorded messages on Plaintiff's answering machine and voice mail boxes, identifying Plaintiff and stating that the message was left in "an attempt to collect a debt";

      c.     Calling Plaintiff's aforementioned cellular telephone number, residential telephone number, business telephone number, and facsimile number, and hanging up either prior to or as soon as Plaintiffs, members of Plaintiff's household, or the Plaintiff's answering machine or voice mail boxes answered the call;

      d.     Calling Plaintiff from numerous different telephone numbers that appeared on Plaintiff's caller ID as someone or some entity other than Defendant or with no identification;

28.     During many of these calls, Defendant would leave messages on Plaintiff's answering machine, which is open to be heard by anyone in hearing range, stating that the message was left in an attempt to collect a debt. Plaintiff, and Plaintiff's minor children, were mortified when their guests heard these messages, as the messages gave the impression that Plaintiff could not pay her bills.

29. The telephone calls at issue were placed by Defendant WELLS FARGO using an "automated telephone dialing system" as specified by the TCPA, 47 U.S.C. § 227(a)(1), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers; and/or which has the capacity to dial numbers from a list without human intervention (hereafter "ATDS" or "autodialer").

30. Defendant WELLS FARGO initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone numbers without the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

31. Additionally, none of the telephone calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

32. Defendant WELLS FARGO willfully and/or knowingly violated the TCPA with respect to Plaintiff.

33. Defendant WELLS FARGO has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

34. Despite actual knowledge of its wrongdoing, Defendant WELLS FARGO continued its campaign of abuse.

35. Defendant WELLS FARGO's corporate policy provided no means for the Plaintiff to have her aforementioned cellular telephone number removed from the call list.

36. Defendant WELLS FARGO has a corporate policy to harass and abuse individuals like the Plaintiff despite actual knowledge that the called parties did not provide prior express

8

consent to receive the calls, or had revoked such prior express consent verbally, in writing, or through retention of legal counsel.

37.     Moreover, Defendant WELLS FARGO has initiated foreclosure proceedings, by and though its agent, Defendant ALDRIDGE CONNORS, in a case styled *Wells Fargo Bank, N.A. v. Karen Hicks, et al, Case No.: 13-CI-002225-CI*, currently pending in the Sixth Judicial Circuit in and for Pinellas County, Florida, wherein Plaintiff is named as a defendant, and Defendant WELLS FARGO, by and through Defendant ALDRIDGE CONNORS, seeks to collect a deficiency judgment as against Plaintiff, individually, despite the fact that Plaintiff does not owe Defendant WELLS FARGO the subject debt (hereafter "Foreclosure Action").

38.     On or about January 2, 2015, Plaintiff filed an Emergency Motion to Compel WELLS FARGO to provide a payoff figure for the subject debt in the above described Foreclosure Action. See Exhibit "D" hereto.

39.     On or about January 5, 2015, WELLS FARGO's agent, Defendant ALDRIDGE CONNORS, sent Plaintiff a "payoff" letter, reflecting that the amount owed as of that date to pay off the subject mortgage was $203,797.17, consisting, in part, of a principal balance of 73,246.76, interest in the amount of $19,888.06, and an escrow balance of $103,791.07. See Exhibit "E" hereto.

40.     On or about January 12, 2015, Plaintiff filed a Motion for Detailed Accounting of Payoff Figure and Motion for Hearing on Attorney's Fees in the above described Foreclosure Action. See Exhibit "F" hereto.

41.     On or about January 14, 2015, Defendant ALDRIDGE CONNORS provided a breakdown of the escrow balance, reflecting that the majority of the $103,791.07 escrow balance

consisted of forced-placed insurance policies, which were placed by WELLS FARGO with its affiliates, Defendants ASSURANT and ASIC.

42.     As set forth above, at no time was Plaintiff legally obligated to pay the subject debt to Defendant WELLS FARGO.

43.     At all times material hereto, Defendant ALDRIDGE CONNORS was aware that Plaintiff did not owe the subject debt to Defendant WELLS FARGO, but nevertheless, proceeded to initiate foreclosure proceedings against Plaintiff to recover a deficiency judgment as against Plaintiff personally, and send Plaintiff collection letters reflecting amounts that the Plaintiff is not legally obligated to pay, and including an escrow balance consisting of excessively priced force-placed insurance policies, as described herein.

44.     Defendant WELLS FARGO followed its corporate policies when attempting to communicate with the Plaintiff in connection with the debt at issue.

45.     Defendant WELLS FARGO has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.

46.     Defendant WELLS FARGO is, or should be, in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of calls made to Plaintiff's cellular telephone number over the relevant time period.

47.     As a direct and proximate result of the acts or omissions of WELLS FARGO and ALDRIDGE CONNORS, as set forth herein, Plaintiff has suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

48.     Plaintiff's statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life pursuant to section 559.77, Florida Statutes, have continued and are continuing as of the filing of this complaint.

49.     All conditions precedent to the filing of this action have occurred or have otherwise been waived.

### FORCE PLACED INSURANCE SPECIFIC ALLEGATIONS

50.     Defendants ASSURANT and ASIC (hereafter collectively "The Assurant Defendants") have exclusive arrangements with Defendant WELLS FARGO to monitor its mortgage portfolio and provide force-placed insurance. In addition to the subsidized mortgage services it receives from the Assurant Defendants, WELLS FARGO and/or its affiliates are kicked back a percentage of the force-placed premium or are paid direct payments for the exclusive relationship disguised as qualified expense reimbursements. WELLS FARGO receives additional compensation through captive reinsurance arrangements.

51.     The forced-placed insurance scheme works as follows: WELLS FARGO purchases master or "umbrella" insurance policies that cover its entire portfolio of mortgage loans. In exchange, the Assurant Defendants are given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate. ASSURANT and its affiliates monitor WELLS FARGO's entire loan portfolio for lapses in borrowers' insurance coverage. Once a lapse is identified, an ASSURANT affiliate, (in this case, ASIC), sends notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not

continued. If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense.

52.     No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the property and the premium charged to the borrower. In many instances, the insurance lapse is not discovered for months or even years after the fact. Despite the absence of any claim or damage to the property during the period of lapse, retroactive coverage is placed on the property and the borrower is charged for the "cost" of the past premiums.

53.     Once coverage is forced on the property, WELLS FARGO pays the insurer for the premium and then charges the borrower for the payment, which is either deducted from the borrower's mortgage escrow account or added to the balance of the borrower's loan. The borrower's escrow account is depleted irrespective of whether other escrow charges, such as property taxes, are also due and owing.

54.     After WELLS FARGO pays the premiums to ASSURANT and ASIC, the Assurant Defendants kick back a set percentage of that amount to WELLS FARGO or its affiliates as a "commission." Upon information and belief, WELLS FARGO's affiliates share a percentage of that payment with WELLS FARGO, sometimes in the form of "soft dollar" credits.

55.     Further, WELLS FARGO has an arrangement with the Assurant Defendants that "qualified expense reimbursement" payments were to be made to WELLS FARGO and/or an affiliate of WELLS FARGO. These "expense reimbursements" are not legitimate reimbursements for actual costs and were simply another form of a kickback to WELLS FARGO for the exclusive arrangement to force-place insurance. These affiliates of WELLS FARGO are shell entities used

exclusively for receipt of the illegitimate reimbursements and do not perform any bona fide services for the payments that they received.

56.     The money paid back to WELLS FARGO and its affiliates is not given in exchange for any services provided by them; it is simply grease paid to keep the force-placed machine moving. In an attempt to mask the kickbacks as legitimate, ASSURANT or ASIC will often disclose to the borrower that WELLS FARGO or its affiliates may earn commissions or compensation as a result of the forced placement of new coverage. In reality, however, no work is ever done by WELLS FARGO or the affiliates, to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place due to the exclusive relationship in place. As a result, no commission or compensation is "earned" and, in addition, neither WELLS FARGO nor its affiliates incur any costs in relation to force-placing insurance on any particular borrower and therefore no "expense reimbursement" is due.

57.     Under this highly profitable force-placed insurance scheme, WELLS FARGO is incentivized to purchase and force place insurance policies with artificially inflated premiums on a borrowers' properties because the higher the cost of the insurance policy, the higher the kickback.

58.     ASSURANT and WELLS FARGO also enter into agreements for ASIC to provide servicing activities on WELLS FARGO's entire loan portfolio at below cost. The servicing costs are added into the force-placed premiums which are then passed on to the borrower. The insurers are able to provide these services at below cost because of the enormous profits they make from the hyper- inflated premiums charged for force-placed insurance. However, because insurance-lapsed mortgaged property comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers who pay these premiums unfairly bear the

entire cost to service the entire loan portfolio. These charges, passed on to Plaintiff are not properly chargeable to the borrower because they are expenses associated with the servicing of all the loans and the loan servicers are already compensated for these activities.

59.     The small percentage of borrowers who are charged for force-placed insurance shoulder the costs of monitoring WELLS FARGO's entire loan portfolio, effectively resulting in a kickback.

60.     In addition, upon information and belief, the Assurant Defendants enter into essentially riskless "captive reinsurance arrangements" with WELLS FARGO's affiliates to "reinsure" the property insurance force-placed on borrowers.

61.     WELLS FARGO's reinsurance program, like those of other lenders, is simply a way to funnel profits, in the form of ceded premiums, to WELLS FARGO at borrowers' expense. While reinsurance can, and often does, serve a legitimate purpose, here it does not. On information and belief, WELLS FARGO and/or its affiliates enter into reinsurance agreements with the Assurant Defendants that provide that the insurer will return to WELLS FARGO significant percentages of the premiums charged borrowers by way of ceded reinsurance premiums to WELLS FARGO affiliates or subsidiaries. The ceded premiums are nothing more than a kickback to WELLS FARGO and a method for Defendants to profit from the forced placement of new coverage. Indeed, while WELLS FARGO and/or its affiliates purportedly provided reinsurance, they did not assume any real risk.

62.     WELLS FARGO also overcharges borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in its standard form mortgage agreement.  Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy. Force-

placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause. This means the borrower is charged for coverage for which the lender or servicer has no exposure.

63.     The amounts charged borrowers are also inflated by the interest that accrues on the amounts owed for force-placed coverage; when WELLS FARGO adds the cost of the high-priced premium to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

64.     The actions and practices described above are unconscionable and undertaken in bad faith with the sole objective to maximize profits. Borrowers who for whatever reason have stopped paying for insurance or are under-insured on mortgaged property are charged hyper-inflated and illegitimate noncompetitive amounts for force-placed insurance. These charges are inflated to include undisclosed kickbacks to the Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements, and discounted administrative services.

65.     Borrowers have no say in the selection of the force-placed insurance carrier or the terms of the force-placed insurance policies. Force-placed policies are commercial insurance policies and their terms are determined by the lender or servicer -- WELLS FARGO, and the insurer -- the Assurant Defendants.

66.     Plaintiff does not challenge WELLS FARGO's right to force place insurance in the first instance. Plaintiff challenges Defendants' manipulation of the force-placed insurance market with an eye toward artificially inflating premiums and placing unnecessary

coverage, which WELLS FARGO purchases from the Assurant Defendants and then chooses to pass on to the borrower. Lenders, like WELLS FARGO, are financially motivated to utilize the insurer, like the Assurant Defendants, that offers it the best financial benefit in the terms of "commissions," "expense reimbursements," discounted tracking services, or ceded reinsurance premiums. This action is brought to put an end to Defendants' exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiff the excess amounts charged to them beyond the true cost of insurance coverage.

## COUNT I

### (Violation of the TCPA against WELLS FARGO)

67.     Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs (1) through (49), as if fully set forth herein.

68.     None of the calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

69.     Furthermore, Plaintiff revoked any "prior express consent" Defendant WELLS FARGO may have mistakenly believed it had by verbally requesting that Defendant stop placing calls to her aforementioned cellular telephone number regarding the debt at issue on numerous occasions.

70.     Furthermore, none of the calls at issue were placed by Defendant WELLS FARGO to Plaintiff's aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

71.     Defendant WELLS FARGO willfully and/or knowingly violated the TCPA with respect to Plaintiff by repeatedly placing calls to Plaintiff's cellular telephone number using an

ATDS and/or artificial or prerecorded voice without Plaintiff's prior express consent, invitation or permission, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

72.     The TCPA provides Plaintiff with a private right of action against Defendant WELLS FARGO for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE the Plaintiff, KAREN L. HICKS, respectfully demands judgment against Defendant WELLS FARGO for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, costs, interest, and any other such relief the court may deem just and proper.

## COUNT II

### (Violation of the FCCPA against WELLS FARGO)

73.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (49), as if fully set forth herein.

74.     At all times material to this action Defendant was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

75.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(5), Florida Statutes, by disclosing to a person other than the Plaintiffs or their family information affecting the Plaintiffs' reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false

76.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully communicating with Plaintiff or any member of Plaintiff's family with such frequency as can reasonably be expected to harass the Plaintiff.

77.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiff.

78.     Defendant WELLS FARGO engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

79.     Defendant WELLS FARGO's actions have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest and costs.

WHEREFORE Plaintiff, KAREN L. HICKS, respectfully demands judgment against Defendant WELLS FARGO for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

### COUNT III
### (Intentional Infliction of Emotional Distress against WELLS FARGO)

80.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (49), as if fully set forth herein.

81.     The outrageous conduct of Defendant WELLS FARGO individually, and through its employees, agents, representatives and collectors, as described herein, deliberately, recklessly and/or intentionally inflicted emotional distress on the Plaintiff.

18

82.    The outrageous conduct of Defendant WELLS FARGO, as described herein, was directed at Plaintiff by and through Defendant's employees, agents, apparent agents or other persons acting to benefit and further the interests of Defendant, and acting in the course and scope of their employment or agency with Defendant.

83.    As a direct and proximate result of the outrageous conduct of Defendant WELLS FARGO as described herein, Plaintiff sustained mental pain and suffering, emotional distress, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff KAREN L. HICKS respectfully demands a trial by jury of all issues so triable and judgment against Defendant WELLS FARGO for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

## COUNT IV
### (Slander of Credit against WELLS FARGO)

84.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (48), as if fully set forth herein.

85.    Defendant WELLS FARGO reported the debt at issue to the Consumer Reporting Agencies as being delinquent with respect to the subject mortgage debt, resulting in the same being reflected on Plaintiffs' credit reports.

86.    The above described reports to the Consumer Reporting Agencies by Defendant WELLS FARGO were false, as described herein, because Plaintiff is not legally obligated to pay the subject debt to Defendant WELLS FARGO.

87.    In making the above reports to the Consumer Reporting Agencies, Defendant WELLS FARGO knew that they were false or exhibited a reckless and/or knowing disregard for their truth or falsity.

88.     As a direct result of the above described false credit reports by Defendant WELLS FARGO, Plaintiff's credit scores and credit worthiness has been impaired.

89.     As a direct and proximate result of the above described false credit reports by Defendant WELLS FARGO, Plaintiff has suffered losses and damages.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant WELLS FARGO for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

COUNT V

(Violation of the FCCPA against ALDRIDGE CONNORS)

90.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (48), as if fully set forth herein.

91.     At all times material to this action Defendant ALDRIDGE CONNORS was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

92.     Defendant ALDRIDGE CONNORS engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in conduct which can reasonably be expected to abuse or harass the Plaintiff.

93.     Defendant ALDRIDGE CONNORS engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

94.     Defendant ALDRIDGE CONNORS' actions have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of

20

emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest and costs.

WHEREFORE Plaintiff, KAREN L. HICKS, respectfully demands judgment against Defendant ALDRIDGE CONNORS for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

## COUNT VI

### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), against WELLS FARGO, ASSURANT and ASIC)

95.     Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (65), as if fully set forth herein.

96.     At all relevant times, Defendants were employed by and associated with an illegal enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in violation of the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO"), 18 U.S.C. § 1962(c).

97.     The RICO enterprise which engaged in and the activities of which affected interstate and foreign commerce, was comprised of an association in fact of entities and individuals that included WELLS FARGO, ASSURANT, and ASIC.

98.     The members of the RICO enterprise had a common purpose: to increase and maximize their revenues by forcing Plaintiff to pay unreasonably high charges for force-placed insurance through a scheme that inflated the premiums to cover kickbacks and expenses associated with monitoring WELLS FARGO's entire loan portfolio. Defendants shared the bounty of their enterprise, i.e., by sharing the premiums generated by the joint scheme.

99.    The RICO enterprise functioned over a period of years as a continuing unit and had a maintained and ascertainable structure separate and distinct from the pattern of racketeering activity.

100.    Defendants WELLS FARGO, ASSURANT, and ASIC conducted and participated in the affairs of this RICO enterprise through a pattern of racketeering activity that lasted more than one year, at a minimum, and that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign wire or mail facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

101.    As part of and in furtherance of the scheme to defraud, Defendants made numerous material omissions and misrepresentations to Plaintiff with the intent to defraud and deceive Plaintiff. For example, ASSURANT and ASIC, with the approval of WELLS FARGO, sent form letters to Plaintiff on WELLS FARGO letterhead, stating that WELLS FARGO would purchase or renew force-placed coverage if voluntary insurance was not secured by a certain date. These Defendants represented in the letters that they would charge Plaintiff for the "cost of the insurance." In making these statements, Defendants knowingly and intentionally fostered the mistaken impression that the force-placed insurance premiums that Plaintiff was charged represented the cost of the policies when in fact such premiums cost more because they were inflated to include kickbacks, unmerited "expense reimbursements," reinsurance profits, discounts, or subsidized costs returned to WELLS FARGO or its affiliates. Defendants had a duty to correct this mistaken impression. The omission was material, as it gave Defendants a colorable reason to charge Plaintiff unreasonably high charges for the force-placed insurance.

102.    For the purpose of executing the scheme to defraud, Defendants sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce

numerous materials, including but not limited to the notices and letters described above informing Plaintiff that they could charge Plaintiff unreasonably high force-placed insurance premiums. Defendants also transferred sums among themselves, including but not limited to various forms of kickbacks, in furtherance of their scheme to defraud Plaintiff, in violation of the wire fraud statutes.

103.   By reason and as a result of Defendants' conduct and participation in the racketeering activity alleged herein, Defendants have caused damages to Plaintiff in the form of unreasonably high charges for force-placed insurance premiums, which Defendant WELLS FARGO has sought to collect from Plaintiff individually by virtue of the above described Foreclosure Proceeding.

WHEREFORE, Plaintiff KAREN L. HICKS respectfully demands judgment against Defendants WELLS FARGO, ASSURANT and ASIC for compensatory and treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c), plus interest and such other relief as this Court deems just and proper.

## COUNT VII

### (Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) Against WELLS FARGO, ASSURANT and ASIC)

104.   Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (65), as if fully set forth herein.

105.   At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(d). Defendants agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

106.    Defendants agreed that ASIC and ASSURANT would be WELLS FARGO's exclusive force-placed insurance providers and would extract the unreasonably high premiums from WELLS FARGO's customers. Defendants also agreed that the Assurant Defendants would pay kickbacks to WELLS FARGO or its affiliates.

107.    WELLS FARGO affiliates pass much of these profits from this scheme to WELLS FARGO.

108.    ASIC passes much of its profits from this scheme to ASSURANT.

109.    Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

110.    As a result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff suffered damages in the form of unreasonably high force-placed insurance premiums.

WHEREFORE, Plaintiff KAREN L. HICKS respectfully demands judgment against Defendants WELLS FARGO, ASSURANT and ASIC for compensatory and treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(d), plus interest and such other relief as this Court deems just and proper.

## COUNT VIII

### (Violation of RESPA, 12 U.S.C. § 2601, *et seq*, against WELLS FARGO)

111.    Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (65), as if fully set forth herein.

112.    The subject mortgage loan qualifies as a "federally related mortgage loan" under § 2602(1)(B)(i) because the mortgage loan was made in whole or in part by a lender, the deposits or

accounts of which are insured by any agency of the Federal Government, or were made in whole or in part by a lender which is regulated by any agency of the Federal Government.

113.    This claim for relief arises under 12 U.S.C. § 2605 which authorizes, among other things, actual damages in an individual action.

114.    This section of RESPA requires that all charges related to force-placed insurance, apart from charges subject to state regulation as the business of insurance, imposed on the borrower by or through the servicer shall be *bona fide and reasonable*.

115.    WELLS FARGO is a mortgage servicer or lender to whom the requirements of section 2605 of RESPA apply.

116.    Wells Fargo has violated § 2605 of RESPA by charging premiums that are unfairly and egregiously costly. This excessively-priced, force-placed insurance cannot be considered *bona fide* and reasonable because Wells Fargo exercised its discretion in choosing an insurance policy capriciously, in bad faith, and in contravention of the parties' reasonable expectations by purposefully selecting an exorbitantly-priced policy and by giving and receiving kickbacks for the procurement of these exorbitantly-priced, force-placed insurance policies. It has negotiated exclusive terms with the Assurant Defendants whereby it receives kickbacks tied to the cost of the insurance premiums. This incentive drives WELLS FARGO to purchase the highest priced forced placed insurance policy that it can, and to often include coverage that is unnecessary.

117.    The force-placed insurance purchased by WELLS FARGO and passed on to Plaintiff cannot be considered bona fide and reasonable as it can cost up to ten times the amount of standard insurance that a borrower was previously paying or could obtain on the open market.

118.    Furthermore, the high-priced premiums charged to Plaintiff cannot be considered reasonable because, despite WELLS FARGO receiving a kickback or commission on each policy

it purchases, it does not pass that savings amount on to Plaintiff. Instead, it still charges the borrowers the full unwarranted and unreasonable amount for the exorbitantly-priced and/or backdated force-placed insurance.

119.    The foregoing actions constitute a general business practice and pattern of WELLS FARGO.

WHEREFORE, Plaintiff KAREN L. HICKS respectfully demands judgment against Defendant WELLS FARGO, for actual damages in the form of unreasonable force-placed insurance premiums in violation of Section 2605 of RESPA, together with additional damages the court may allow as a result of the pattern of purchasing high-priced and unnecessary force-placed insurance in order to collect a large kickback or commission, in addition to attorneys' fees and costs, interest, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/David P. Mitchell
David P. Mitchell, Esq.
Florida Bar No. 067249
MANEY & GORDON, P.A.
101 East Kennedy Blvd., Suite 3170
Tampa, Florida 33602
Telephone: (813) 221-1366
Fax: (813) 223-5920
David@MitchellConsumerLaw.com
Counsel for Plaintiff

# THE HAIR HOSPITAL

*"The Place For Severely Damaged Hair"*

July 15, 2008

To Whom It May Concern
Wells Fargo Home Mortgage

    Loan Number:   0035539972
    Client Number:   708

Please be advised that Mrs. Donna H. Hicks is deceased.
Enclosed please find her death certificate
photocopy.  Also enclosed please find several pages from the
family Inter Vivos Trust Agreement wherein I am the
Successor Trustee as well as the beneficiary for distribution
on death.  Please provide me with the information to
be able to set up an automatic draw on the mortgage from
my account so this month's event does not happen again.

Please be free to contact me at the phone number listed
below.

Thank you for your kind cooperation and assistance in the
handling of this matter.

Very truly yours,

Karen L. Hicks
Trustee of the Donna H. Hicks Trust
AGreement Executed on December 30, 2002

(727) 345-5541

7038 Central Avenue
St. Petersburg
Florida 33707

Phone 727-345-5541
Fax 727-381-5129

Email do.doc@verizon.net
www.hairhospital.biz

EXHIBIT
A

# STATE OF FLORIDA

## OFFICE of VITAL STATISTICS
### CERTIFIED COPY

**FLORIDA CERTIFICATE OF DEATH**

VOID IF ALTERED OR ERASED

1. DECEDENT'S NAME (First, Middle, Last) — Donna ... Hicks
2. SEX — Female

4a. AGE-Last (Years) — 80
5. DATE OF DEATH (Month, Day, Year) — June 17, 2008

3. DATE OF BIRTH (Month, Day, Year) — January 09, 1928

6. BIRTHPLACE (City and State or Foreign County) — Marion, Ohio
7. COUNTY OF DEATH — Pinellas

SOCIAL SECURITY NUMBER — ...-20-0384

PLACE OF DEATH — Palms of Pasadena Hospital

South Pasadena

SPOUSE'S NAME (If wife, give maiden name) — None

MARITAL STATUS — Widowed

USUAL OCCUPATION — Professional Guardian
KIND OF BUSINESS/INDUSTRY — Legal

STATE — Florida
COUNTY — Pinellas
CITY OR TOWN — St. Petersburg
ZIP CODE — 33710

STREET ADDRESS — 686 9th Avenue N

DECEDENT'S EDUCATION

WAS DECEDENT EVER IN U.S. ARMED FORCES? — No

FATHER'S NAME — Lloyd D. Hair

MOTHER'S NAME — Karen L. Hicks
BIRTH STATE — Florida

INFORMANT'S MAILING — St. Petersburg
STREET ADDRESS — 6746 15th Avenue
ZIP CODE — 33710

NAME OF FUNERAL FACILITY — Affinity Direct Cremation Service
Brandon

LICENSE NUMBER
CERTIFIER'S NAME — Paul F. Itori M.D.

STATE — Florida
CITY — South Pasadena
615 Pasadena Ave S, Ste 480

DATE — April 27, 2008



**Barbara M Sawer**
Chief Deputy Registrar, Pinellas County

Issued: July 2, 2008

WARNING: THE ABOVE SIGNATURE CERTIFIES THAT THIS IS A TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE. THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA ON THE FRONT, AND THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOGRAPHIC INK.

FLORIDA DEPARTMENT OF HEALTH

DH FORM 1946 (08-04)

41469855

**CERTIFICATION OF VITAL RECORD**

*41469855*

# REVOCABLE INTER VIVOS TRUST AGREEMENT

## OF

## DONNA H. HICKS

**THIS REVOCABLE TRUST AGREEMENT** is hereby made by and between Donna H. Hicks, a resident of and domiciled in Pinellas County, Florida hereinafter referred to as "Grantor" this 30th day of December, 2002.

### WITNESSETH:

That the Grantor has this date delivered to the Trustee the property described in Schedule "A" attached hereto and made a part hereof by referenced of this Revocable Trust Agreement. The Trustee hereinafter agrees to hold, administer and distribute all of the aforesaid estate, together with all additions and all reinvestment thereof in accordance with the following terms, provisions and conditions subject to the reservations herein contained.

**ARTICLE 1**
**Trust Estate**

The Trust estate shall be comprised of the assets shown on Schedule "A" attached hereto and made a part hereof and any and all other assets delivered by the Grantor to the Trustee, together with any assets received by the Trustee pursuant to the terms hereof from any other person or from the estate of the Grantor or under the Will of any other person and together with all accruals and income resulting from any trust properties. For the purpose of convenience, all such assets held or received at any time by the Trustee shall be referred to as Trust Assets.

**ARTICLE 4**
**Payment of Debts, Expenses, Costs of Administration and Death Taxes**
**upon Grantor's Death.**

Upon the death of Grantor, the Trustee shall provide for payment out of the

principal of the trust property of all of (a) Grantor's legally enforceable debts, (b) the

expenses of the Grantor's last illness and funeral and of the administration of assets

included in Grantor's estate for federal estate tax purposes, and (c)the estate,

inheritance, succession and other death taxes, including interest and penalties imposed

under the laws of any jurisdiction by reason of Grantor's death on or with respect to any

property or the transfer or receipt of any property passing or which has passed under or

outside this instrument or any amendment hereto, whether through Grantor's probate

estate or by operation of law or any other form of transfer. All payments of Grantor's

debts, expenses of last illness, funeral and administration expenses pursuant to the

above provisions of this paragraph shall be charged against the principal of the trust

property without apportionment or proration including taxes.

**ARTICLE 5**
**Execution**

DONNA H. HICKS, as the Grantor, hereby appoints Karen L. Hicks, as

Successor Trustee and James L. Hair as First Successor Trustee, to hold in trust the

property transferred to this Living Trust for the use and benefit of the Grantor and other

Beneficiaries designated herein.   Reference in this Trust to the "Trustee" shall be

deemed to be a reference to whoever is serving as the original Trustee, alternate

Trustee, successor Trustee, or Co-Trustees.

*DHH*

B.      Upon the death of the Grantor, the Trustee shall accept any devises from the Grantor's estate and from any source and:

(1)     Pay any and all funeral and burial costs for the Grantor, any obligations owed by the Grantor at the time of death, any costs for the administration of the Grantor's estate preparing and filing of income and estate tax returns and any income, estate, inheritance or other taxes so required.

(2)     Distribute the remaining Trust assets to my daughter, Karen L. Hicks.

(3)     Notwithstanding the foregoing provisions, the Trustee shall distribute such of the Grantor's tangible personal property as indicating in any separate writing or list which is signed by the Grantor and which may be in existence at the time of the Grantor's death. If no separate writing is found and identified by the Trustee within thirty days of the death of the Grantor, it shall be presumed that there is none and any subsequently discovered writing shall be ignored.

## ARTICLE 9
## Distribution of Trust Assets

A. If, in the sole discretion of the Trustee any Beneficiary shall be incompetent, or incapacitated at the time any Trust income or principal is to be distributed, the Trustee may, in its sole discretion, make

B. distribution as follows:

receiving such distribution shall be a full acquittance and discharge of any further Trust duty.

## ARTICLE 18
## Rule Against Perpetuities

All other provisions of the Will or of the Trust notwithstanding, no trust created hereby shall continue for more then 21 years after the death of the last to die of the Grantor and the Beneficiaries in being at the date of executions of this Trust Agreement. Any property still held in trust at the expiration of that period shall immediately be distributed to the persons then entitled to receive or have the benefit of the income therefrom in the proportions in which they are entitled thereto, or if their interest are indefinite, then in equal shares.

## ARTICLE 19
## Florida Law

This Living Trust shall be construed, regulated, and administered in all respects according to the laws of the State of Florida.

IN WITNESS WHEREOF the Grantor has executed this REVOCABLE INTER VIVOS TRUST AGREEMENT OF DONNA H. HICKS  in duplicate on the day, month, and year above written.

_____
Grantor

IN THE PRESENCE OF

_____
Witness

_____
Witness

STATE OF FLORIDA
COUNTY OF PINELLAS

WE, the undersigned witnesses and the Grantor, whose names are signed to the attached or foregoing instrument, were sworn and declared to the undersigned officer that Donna H Hicks signed the instrument in the presence of the witnesses as the First Restatement of her Revocable Inter Vivos Trust Agreement and that each of the witnesses, in the presence of Donna H. Hicks and in the presence of each other, signed the Restatement as a witness.

Sign _Donna H. Hicks_
        Grantor
☐  Personally known to Notary, or
☑  Produced Identification _FL Drivers License_

Sign _Mary F Howard_
Print _MARY L HOWARD_
        Witness
☑ Personally Known to Notary, or
☐ Produced Identification _____

Sign _Diane B. Wallace_
Print _DiAne B. WAllAce_
        Witness
☑ Personally known to Notary, or
☐ Produced Identification _____

SWORN TO AND SUBSCRIBED before me on this 30th day of December, 2002, by the Grantor and witnesses, whose names are signed and printed above, all of whom personally appeared before me, all of whom are personally known to me  or who have produced identification, as indicated above.

_Crystal Gnidovec_
NOTARY PUBLIC, State of Florida
My Commission No.:
My Commission Expires:

CRYSTAL GNIDOVEC
Notary Public, State of Florida
My comm. exp. Apr. 16, 2005
Comm. No. DD 005845

2804 45th Street South
St. Petersburg, Florida  33711
727 345-5541
July 26, 2010


Wells Fargo Home Mortgage
Post Office Box 14411
Des Moines, Iowa  50306

      In re:  Estate of Donna H. Hicks
      Loan Number:  0035539972

Dear Sirs;

      This is to advise that your company has  wrongly and illegally
debited my checking account for the above referenced mortgage payment
on July 15, 2010.  I have never authorized you to withdraw any monies
from my account through Wachovia 1010......0753.  Therefore, this is to
demand that you immediately forthwith return all monies taken from my
account in the sum of $1615.92 plus interest and cease any automatic
draw from this or any account I may have.

      My correct address is listed above.

      Thank you for your kind cooperation and assistance in the handling
of this matter.

      Very truly yours,


      Karen L. Hicks,
      Trustee of that Inter Vivos Trust for Donna H. Hicks



EXHIBIT
_B_

WELLS | HOME
FARGO | MORTGAGE
PO Box 14411
Des Moines, IA  50306-3411

**Monthly Mortgage Statement**

Statement Date    07/15/10
Loan Number       0035539972

### Customer Service

Online
yourwellsfargomortgage.com

Fax                                  Telephone
(866) 278-1179                       (866) 234-8271

Correspondence                       Hours of Operation
PO Box 10335                         Mon - Fri, 6 AM - 10 PM
Des Moines IA 50306                  Sat, 8 AM - 2 PM CT

Payments                             TTY Deaf/Hard of Hearing
PO Box 660455                        (800) 934-9998
Dallas TX 75266

Purchase or Refinance  (800) 443-3429

1AT        2422/178422/002422 518 01 ACNJF7 708
ESTATE OF DONNA H HICKS
6746 9TH AVE NORTH
ST PETERSBURG FL  33710-6140

### Important Messages

**DISASTER PREPARATION**
Our disaster assistance line is here
to help if you are ever affected by a
disaster such as a fire, flood, or storm.
If needed, a dedicated disaster
representative is available at
(888) 818-9147.

This is not a bill. This mortgage statement
reflects drafted payment application(s). Please
disregard the payment coupon unless you are
making additional principal or escrow
payments. If you are paying off your loan,
please remember to cancel your draft at least
five (5) days prior to your next draft date.

## Summary

| | | Property Address |
|---|---|---|
| Payment (Principal and/or Interest, Escrow) | $1,615.92 | 5815 BALI WAY N |
| Optional Product(s) | $0.00 | ST PETERSBURG BEA FL 33706 |
| **Current Monthly Payment** | **$1,615.92** | Unpaid Principal Balance $73,124.98 |
| | | *(Contact Customer Service for your payoff balance)* |
| Overdue Payments | $0.00 | Interest Rate 5.875% |
| Unpaid Late Charge(s) | $0.00 | Interest Paid Year-to-date $2,522.59 |
| Other Charges | $0.00 | Taxes Paid Year-to-Date $0.00 |
| | | Escrow Balance $6,505.19 |
| **TOTAL PAYMENT** | **$1,615.92** | |

**NEW ONLINE AGREEMENT**
We've updated our Online Access Agreement.
To see what has changed, visit
**wellsfargo.com/onlineupdates**.

**THE COMFORTS OF HOME**
We know how important your home is to you.
Since 1852, Wells Fargo has been helping
people reach their personal and financial
goals. Today, we appreciate the opportunity to
help you enjoy the rewards of homeownership.

### Activity Since Your Last Statement

| Date | Description | Total | Principal | Interest | Escrow | Late Charge | Other |
|---|---|---|---|---|---|---|---|
| 07/15 | PAYMENT | $1,615.92 | $121.78 | $358.60 | $1,135.54 | | |
| | PAYMENT | $1,615.92 | $121.18 | $359.20 | $1,135.54 | | |
| 05/20 | HAZARD INS PMT | $990.00- | | | $990.00- | FIDELITY NATL INS | |
| 05/17 | PAYMENT | $1,615.92 | $120.59 | $359.79 | $1,135.54 | | |

178422/002422 ACN JF7 2422 ETM1C023

---



WELLS | HOME
FARGO | MORTGAGE

| Loan Number | 0035539972 | Monthly Payment A | $ |
| | | x pmt amt | • |
| | | Additional B Principal | $ • |
| *Check here and see reverse for address correction.* | ESTATE OF DONNA H HICKS | Please specify additional funds. Any additional funds not specified will be applied first to any outstanding charges. | Late C Charges  $ • |
| | 2422/178422/002422 518 01 ACNJF7 708 | | Other D Charges  $ • |
| WELLS FARGO HOME MORTGAGE | | | Additional E Escrow  $ • |
| PO BOX 660455 | | | |
| DALLAS TX 75266-0455 | | | |



**THIS IS NOT A BILL, BUT FOR YOUR INFORMATION ONLY.**

Total Amount Enclosed F   $
(Please do not send cash)                    •

708 0035539972 8 100001615920163994016159200000000 00000005001041772 9

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wells Fargo Home Mortgage
Post Office Box 14411
Des Moines, Iowa  50306

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x _Joann Miller_    ☒ Agent
                     ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                   JUN 2 0 2010

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7009 1410 0001 3206 5588

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-154

WELLS FARGO HOME MORTGAGE
RETURN MAIL SERVICES
PO BOX 10368
DES MOINES IA 50306-0368



01/03/14

|¦¦¦¦¦|¦|¦¦|¦||¦¦||¦¦¦¦|||||¦|¦|¦|¦|||||¦||¦¦|¦

1AB      00979/017761/001907 0068   3 ACR3QWDF047 708

DONNA H HICKS DECEASED
9311 BLIND PASS RD
ST PETE BEACH, FL 33706-1357

| Account Information | |
|---|---|
| Online: | yourwellsfargomortgage.com |
| Fax: | 1-866-278-1179 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | 0035539972 |
| Property address: | 5815 Bali Way N |
| | St Petersburg Bea FL 33706 |

Subject: Discontinue phone contact

Dear Donna H Hicks Deceased:

Thank you for your recent call. During our conversation, you asked that Wells Fargo Home Mortgage discontinue all future contact by telephone. To honor your request means we will not contact you in the future when new options are available to you for your loan.

We are happy to fulfill your request to discontinue telephone contact with you, and to do so we need you to review and sign the brief statement at the bottom of this letter and return it to the address listed in the account information section of this letter. We will keep your signed notice on record with your loan information. Once we receive your signed statement, we will discontinue contact with you via telephone; however, you will continue to receive monthly statements and any letters required by law. If we do not receive your signed request, you will continue to receive telephone communication.

If you have any questions or need further assistance, please contact us at the phone number listed in the account information box at the top of this letter.

Home Preservation Department
Wells Fargo Home Mortgage

**Struggling with other expenses? Help is available.**
Sometimes customers have trouble keeping up with their monthly expenses, other than their mortgage payments. If this is happening to you, help is available at no cost from a HUD-approved, non-profit credit counseling agency. Simply call a counselor who will work closely with you to lower your other monthly payments, take your financial circumstances into consideration, and create a budget plan to work for you. To find an agency in your neighborhood, call 1-800-569-4287 or call the HOPE Hotline at 1-888-995-HOPE.

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo



WFM307C

DF047 708
017761/001907 ACR3QW S1-ET-M1-C005



7080035539972DF047



EXHIBIT
C

| Account Information | |
| --- | --- |
| Loan number: | 0035539972 |
| Property address: | 5815 Bali Way N |
| | St Petersburg Bea FL 33706 |

Home Mortgage.





I/we, Donna H Hicks Deceased, hereby request that any further telephone contact from Wells Fargo Home Mortgage be discontinued. I understand that I will continue to receive any legally required notices and correspondence required for Wells Fargo Home Mortgage to continue servicing my loan.

Signed:_____ Date _____
       Donna H Hicks Deceased (Required)                       (Required)

Signed:_____ Date _____
       (Required if applicable)           (Required)

Loan Number 0035539972





DF047 708
017761/001909 ACR3QW S1-ET-M1-C005
7080035539972DF047

IN THE SIXTH JUDICIAL CIRCUIT COURT IN AND FOR PINELLAS COUNTY, FLORIDA

Case Number:  13-00225-CI   Division 15

**WELLS FARGO BANK, N.A.**

      Plaintiffs,

Vs.

**KAREN L. HICKS**,
unknown spouse of Karen L. Hicks,
unknown beneficiaries, heirs,
and devisees of the Estate of Donna
H. Hicks a/k/a DONNA HAIR HICKS,
DECEASED; and any and all unknown
Parties claiming by through under and       **Uniform Case # 52201CA00225XXCICI**
Against the herein name individual
Defendant who are not known to be
dead or alive whether said unknown
Parties may claim an interest as spouse,
heirs devisees, grantees or other claimants
Unknown Tenant #1, Unknown Tenant #2
Unknown Tenant #3, unknown Tenant #4,
that name being fictitious to account for
Parties in possession.

      Defendant(s).

_____/

## EMERGENCY MOTION TO COMPEL

## PLAINTIFF TO PROVIDE PAYOFF

      Comes now, Defendant, Karen L. Hicks, pro se, hereby moves this Honorable Court pursuant to Fla. R. Civ. P. 1. 380), respectively to Compel Plaintiff, Wells Fargo to act in good faith and provide a complete itemized statement for payoff of the Mortgage which is the subject of this foreclosure and alleges as follows:

    1.     The Defendant has attempted to sell the property several times in the past several years.  On two occasions, Plaintiff has failed to provide payoff figures in order for Defendant, Karen L. Hicks to satisfy the subject mortgage.


EXHIBIT
D

2. Due to the Plaintiff's bad faith actions, the Defendant has been unable to satisfy said mortgage.

3. The Plaintiff alleges it owns the Note and the Mortgage by virtue of an assignment to be recorded.

4. The Plaintiff claims Defendants are in default under the terms of the Note and Mortgage but refuses to provide necessary figures to satisfy the subject mortgage.

5. Defendant, Karen L. Hicks has secured a buyer through her Realtor, Don Taylor and has been attempting to close on the property.

6. Defendant, Karen L. Hicks personally, and Defendant's Title Insurance Company, has called, emailed and otherwise attempted to communicate directly with Wells Fargo mortgage department. At all times heretofore, the Plaintiff has failed refused and neglected to attempt any form of communication with the Title Insurance Company to facilitate said sale.

7. Defendant, Karen L. Hicks personally and Defendant's Title Insurance Company, has called, emailed and otherwise written communicated to Counsel, Aldridge and Connors, Attorneys at Law, and requested a payoff figure. Plaintiff's Counsel has failed refused and neglected to return calls or communication in any fashion.

8. On or about Friday, January 2, 2015, (one day prior to scheduled closing) Defendant, Karen L. Hicks contacted telephonically, Aldridge and Connors at 4:20p.m. and spoke with Tiffany. A message was left with "Tiffany" wherein she advised that Defendant, Karen L. Hicks would file an Emergency Motion to Compel on Monday should Defendant, Karen L. Hicks or her agent not receive said proper payoff itemization and figures promptly.

9. Plaintiff and Plaintiff's Counsel has not acted in good faith and continues to refuse to provide the information necessary to resolve the litigation herein.

10.     Defendant, Karen L. Hicks will suffer severe damages if Plaintiff, Wells Fargo fails to provide and cooperate in the sale of the subject property by January 6, 2015.

11.     Defendant, Karen L. Hicks has and continues to incur expenses, including but not limited to interest, taxes, insurance and attorney's fees which are unnecessary and beneficial only to Plaintiff by its failure to comply with payoff information.

**WHEREFORE**, Defendant, Karen L. Hicks, respectfully request the Honorable Court to Compel Plaintiff, Wells Fargo and/or its Counsel to provide the necessary information necessary and incident to the sale and closing of this property in order to resolve the litigation herein, award attorney's fees and costs in defense of this action, and any other relief deemed just and equitable the premises.

### CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that a copy of the foregoing has been furnished by United States Mail to Aldridge Connors, LLP, Attorney's for Plaintiff(s), 7000 West Palmetto Park Road. Suite 307, Boca Raton, Florida, 33433 this 2nd day of January, 2015.

**Karen L. Hicks, Defendant**
**9311 Blind Pass Road**
**St. Petersburg Beach, Florida  33706**
**(727) 345-5541**

## Karen Hicks

| | |
|---|---|
| **From:** | FLPayoffReinstatement <FLPayoffReinstatement@aclawllp.com> |
| **Sent:** | Monday, January 05, 2015 2:53 PM |
| **To:** | 'Do.doc@verizon.net' |
| **Cc:** | Russell Blenk |
| **Subject:** | Payoff Quote (Good Through 1/15/15) |
| **Attachments:** | 0035539972 PO.pdf |

Please find the requested document(s) for the following:

Borrower: Hicks, Donna

Loan#: 0035539972

Property Address: 5815 BALI WAY S, ST PETERSBURCH BEACH, FL 33706


**Bryan Weekes**
Operations Support
Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, Ga 30305
Phone: 404-994-7398
Email: bweekes@aclawllp.com

---

**PLEASE BE ADVISED THAT THIS COMMUNICATION MAY CONSTITUTE AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

This e-mail and any attachments contain information from the law firm of Aldridge Connors, LLP and are intended solely for the use of the named recipient(s). This e-mail may contain privileged attorney-client communications or work product. Any dissemination of this e-mail or its attachments by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or its attachments or from making any use of same. If you believe you have received this e-mail in error, please notify the sender by replying to this email or calling the sender at (404) 994-7400 and delete the e-mail from any drives or storage media and destroy any print out(s) of this e-mail or its attachments.



ALDRIDGE CONNORS
LLP

**January 5, 2015**

Karen L. Hicks
Do.doc@verizon.net

Re: Payoff Quote

> Loan Number:                0035539972
> Mortgagor(s):               Donna H Hicks
> Property Address: 5815 BALI WAY S, ST PETERSBURCH BEACH, FL 33706
> Attorney/Trustee File No.:  1113-747613B
> Due Date:                   7/1/2010

**PLEASE BE ADVISED THAT THIS LAW FIRM MAY BE ACTING AS A DEBT COLLECTOR AND ANY INFORMATION OBTAINED DURING OR AS A RESULT OF THIS COMMUNICATION MAY BE USED FOR THAT PURPOSE.**

However, if you are in bankruptcy or have been discharged in bankruptcy, this letter is for informational purposes only and is not intended as an attempt to collect a debt or as an act to collect, assess, or recover all or any portion of the debt from you personally.

Dear Karen L. Hicks:

This letter responds to your request for a payoff of the above referenced loan.

As of the date of this letter, the amount required to payoff your loan is $203,797.17. However, if you are not prepared to tender the full payoff amount today, then the amount you owe may increase between the date of this letter and the date you pay off the loan. The payoff amount may increase because of additional interest and late charges as well as legal fees and costs that are incurred as additional steps in the foreclosure proceed.

This payoff is good through 1/15/2015, the "Good Through Date." If you pay this loan in full by the Good Through Date, we estimate the payoff amount to be itemized as follows:

ALDRIDGE | CONNORS
LLP

| Description | Amount |
|---|---|
| Principal Balance | $ 73,246.76 |
| Accrued Interest to 1/15/2015 | $ 19,888.06 |
| $ 11.79 *per diem* interest thereafter | $ - |
| Late Charges | $ 264.22 |
| Escrow Balance | $ 103,791.07 |
| Other Fees Due | $ 30.00 |
| Recoverable Balance | $ 6,152.06 |
| Attorney/Trustee Foreclosure Fees | $ 425.00 |

Less positive balance on your account                                          $0.00

TOTAL ESTIMATED PAYOFF* THROUGH 1/15/2015 is:          $ 203,797.17

The payoff figures listed above include items that have been paid by the lender or servicer or incurred by Aldridge | Connors, LLP that are currently due by the Good Through Date. Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this payoff letter will continue to be assessed until the loan is paid in full

* IMPORTANT: We only require that you pay the fees and costs actually incurred as of the date of your payment. If for whatever reason your payment includes any anticipated fee or cost or other item but the actual amount due on the date of payment is less, any excess amount will be promptly returned to you. If your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

WE SUGGEST THAT YOU CONTACT ALDRIDGE | CONNORS, LLP AT THE ADDRESS OR TELEPHONE NUMBER ON THIS LETTER TO VERIFY THE EXACT AMOUNT NECESSARY TO PAYOFF YOUR LOAN NO MORE THAN 24 HOURS BEFORE YOU MAKE ANY PAYMENT.

PAYMENT INSTRUCTIONS. Payment must be submitted in the form of a CERTIFIED CASHIER'S CHECK(S) AND/OR MONEY ORDER(S) AND MUST BE MADE PAYABLE TO WELLS FARGO BANK, N.A.. **WIRE TRANSFER FUNDS TO:**

ALDRIDGE | CONNORS
LLP

**BB&T; ACCOUNT NAME: ALDRIDGE CONNORS, LLP FLORIDA IOLTA; ABA NO. 061113415, BENEFICIARY ACCOUNT NO. 0005245278057 ATTN: ALDRIDGE CONNORS, LLP, CLIENT SERVICES. INCLUDE THE FOLLOWING INFORMATION: LOAN #, ATTORNEY FILE #, PROPERTY ADDRESS.** Funds must be sent to the attorney/trustee office listed on this letter. The payoff funds will be returned if any portion of the funds is in the form of a personal check. Please be advised that the action will continue until the total payoff received, in compliance with the terms in this letter. After payoff, you may be required to sign appropriate documents and take other requested action to assist in obtaining a withdrawal of the foreclosure.

PLEASE CAREFULLY READ THE FOLLOWING INFORMATION CONCERNING THE FORECLOSURE.

PLEASE NOTE: If there is a foreclosure sale date scheduled for your property, this letter does not extend or change that foreclosure sale date. Therefore, if the Good Through Date for the payment stated in this letter continues past the scheduled foreclosure sale date, the foreclosure sale will nonetheless occur unless the loan is reinstated or paid off prior to the foreclosure sale as required by applicable law.

You should verify the loan number, the name(s) of the Mortgagor(s), the property address and the amounts due and owing to ensure that these items are correct. Should you have any questions regarding the above, please do not hesitate to contact the attorney or foreclosure trustee at the telephone in this letter.

Sincerely,

ALDRIDGE | CONNORS, LLP

IN THE SIXTH JUDICIAL CIRCUIT COURT IN AND FOR PINELLAS COUNTY,
FLORIDA

Case Number:  13-00225-CI   Division 15

**WELLS FARGO BANK, N.A.**

      Plaintiffs,

Vs.

**KAREN L. HICKS,**
unknown spouse of Karen L. Hicks,
unknown beneficiaries, heirs,
and devisees of the Estate of Donna
H. Hicks a/k/a DONNA HAIR HICKS,
DECEASED; and any and all unknown
Parties claiming by through under and
Against the herein name individual
Defendant who are not known to be
dead or alive whether said unknown
Parties may claim an interest as spouse,
heirs devisees, grantees or other claimants
Unknown Tenant #1, Unknown Tenant #2
Unknown Tenant #3, unknown Tenant #4,
that name being fictitious to account for
Parties in possession.

      Defendant(s).

_____/

**Uniform Case # 52201CA00225XXCICI**

## MOTION FOR DETAILED ACCOUNTING OF PAYOFF FIGURE AND MOTION FOR HEARING ON ATTORNEY'S FEES

    Comes now, Defendant, Karen L. Hicks, pro se, hereby moves this Honorable Court for a Detailed Accounting of Figures for Payoff and for a Hearing to Determine Reasonableness of Attorney's fees and says as follows:

1.     The Defendant has attempted to communicate with Plaintiff's Counsel quite literally for years.

2.     Plaintiff's counsel has failed, refused and neglected communication in order to resolve the herein foreclosure.

3.     Due to Plaintiff's refusal, Defendant, Karen L. Hicks incurred excessive fees and forced placed insurance.



4.      Defendant, Karen L. Hicks, requests this Honorable Court set a hearing to determine the reasonable attorney's fees to which Defendant has been forced to pay in an undisclosed, non-itemized and much delinquently provided payoff figure. Defendant, Karen L. Hicks, continues to receive monthly statements addressed to her deceased mother (now deceased since June 17, 2008) which clearly are inconsistent with minimal payoff statement.   A copy of the December, 2014 statement is attached hereto and made a part hereof and marked Defendant's exhibit "A".

5.      Plaintiff's counsel literally waited until the eleventh hour to provide payoff as Defendant, Karen L. Hicks was forced to file a Motion to Compel and drive to the Courthouse in order to await the payoff figure.   The deadline to Well's Fargo counsel was 3:00 p.m. on January 5, 2015.   The email containing the payoff figure was received 2:58p.m on January 5, 2015.   A copy of the "payoff email" is attached hereto and made a part hereof and marked Defendant's exhibit "B".

6.      Plaintiff's bad faith and lack of professional cooperation has cause undue and excess fees and costs to Defendant, Karen L. Hicks.

**WHEREFORE**, Defendant, Karen L. Hicks, respectfully request this Honorable Court for an Order Directing Plaintiff, Wells Fargo and/or its Counsel to provide the necessary detailed information and accounting of its "payoff" figures and for a Hearing to Determine the Reasonableness of Attorney's fees  attached to said payoff figures and any other relief as the Court deems necessary and just.

### CERTIFICATE OF SERVICE

**I DO HEREBY CERTIFY** that a copy of the foregoing has been furnished by United States Mail to Aldridge Connors, LLP, Attorney's for Plaintiff(s), 7000 West Palmetto Park Road. Suite 307, Boca Raton, Florida, 33433 this 12nd day of January, 2015.

*Karen L. Hicks*

**Karen L. Hicks, Defendant**
**9311 Blind Pass Road**
**St. Petersburg Beach, Florida  33706**
**(727) 345-5541**